**Opinion issued September 4, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-13-00432-CR**
**NO. 01-13-00433-CR**

————————————

**MICHAEL HILL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1277873 and 1320176**

---

# O P I N I O N

A Harris County grand jury indicted Michael Hill on charges of aggravated sexual assault and aggravated robbery. TEX. PENAL CODE ANN. §§ 22.01, 29.03 (West 2011 & Supp. 2014). After a jury found Hill guilty of both charges, the trial

court assessed punishment of forty-five years' imprisonment on each charge, with sentences to run concurrently.

On appeal, Hill contends that the trial court erred (1) in failing to include a proper accomplice–witness instruction in the jury charge on his aggravated sexual assault charge; and (2) in including an accomplice–witness instruction in the jury charge relating to his aggravated robbery charge. Finding no error, we affirm.

## Background

Adrienne F. met Hill, whom she knew as "Mark" or "Marcus," near the mailboxes in her apartment complex. After a short conversation, they exchanged telephone numbers. A few days later, on September 13, 2010, Hill called Adrienne and asked to see her. She told Hill, who was at least a foot taller than Adrienne, that she could use his help in hanging curtains.

When Hill arrived, the two made small talk for a few minutes before Hill excused himself to use the bathroom. They continued to converse through the door. Adrienne asked Hill what he did for a living. The door opened, and Hill pointed a gun at her. He said, "Actually, I'm working now." As he pointed the gun at her right temple, Hill told her to give him her money. Adrienne responded that she didn't have any; Hill told her to look through her purses. She gave Hill $183 that she had set aside to pay her car loan, but Hill did not leave. *Id.* Instead, he ushered her to the bed, unbuttoned his pants, and told her to remove her clothes.

2

Continuing to hold the gun to Adrienne's head, Hill ordered her to perform oral sex, assaulted her vaginally, and then demanded more oral sex. When he finished, Hill cleaned himself with a towel, dropped it on the floor, buttoned his pants, and walked out of the apartment.

A few seconds later, Adrienne wrapped herself in a blanket and ran outside. She saw Hill entering the front passenger side of a black SUV and noted the license plate number. She yelled that she would call 9-1-1. Hill looked at her but did not respond. The SUV started, backed out, and drove off.

Adrienne returned to her apartment and called the police. When two male police officers arrived, she told them that Hill had robbed her at gunpoint. Adrienne testified that she initially did not tell the officers that Hill sexually assaulted her because she felt embarrassed about having let him into her apartment in the first place.

After the officers left, Adrienne called and talked to a friend about the ordeal, and the friend convinced her to report the assault. Adrienne did so, and the officers returned to her apartment. This time, they brought a female officer with them. They spoke with Adrienne again and conducted another search. That search produced the towel that Hill had used.

In the meantime, the officers located the SUV and apprehended Hill. The same afternoon, they showed Adrienne a photo array, from which she identified Hill as the person who had robbed and sexually assaulted her.

Hill testified in his own defense. Hill explained that he had encountered an advertisement for escort services that Adrienne had posted on an Internet website styled backpage.com. He called the telephone number provided in the ad and arranged to meet her at her apartment. Hill denied having a weapon. He claimed that he and Adrienne negotiated a $40 fee for oral sex. When he tried to pay her with a $100 bill, he claimed that she tried to persuade him to have a longer sexual encounter so that she could receive a higher fee. Hill testified that he was in a hurry to leave. He saw a purse hanging on the bedroom door, reached in, took $60 out as change, and walked toward the front door. Hill claimed that when Adrienne accused him of stealing her money, he turned to look at her and saw a knife in her hand. He recounted that, as he left the apartment, she continued to yell at him about stealing her money and threatened to call the police.

Adrienne admitted placing an ad on backpage.com, but denied having met Hill through the website. She explained that she had placed the ad to earn extra money while in graduate school; she had offered companionship in the ad, but not sex. Adrienne had gone on several dates as a result of the ad, but took it down immediately after the assault, about a month after the original posting.

4

To rebut Hill's testimony that the sexual contact with Adrienne had been consensual, the State offered testimony from Harris County resident Stacie R. Stacie recounted an experience involving Hill that occurred the afternoon of Sunday, September 12, 2010—the day before the assault on Adrienne.

Stacie had met Hill at a social event several weeks before. He had introduced himself as "Red," and the two exchanged telephone numbers. That Sunday afternoon, Hill called Stacie from his car and told her that he was near her townhome. He asked if he could come by for a visit. Stacie assented.

When Hill arrived, Stacie noticed that he was sweating profusely. She offered him a glass of water. While Stacie was in the kitchen, Hill said he left something in his truck and walked out the front door. Hill returned with two men. All three were armed. Hill held a gun to Stacie's face. While the other men ransacked Stacie's home, Hill forced her to perform oral sex on him. When the two other men were ready to leave, Hill, still holding the gun, fastened his pants and left with them. Shaken, Stacie called her brother. She reported the incident to the Houston Police Department two days later. In response to the State's question, Stacie averred that she has never posted an ad for escort services. Further, she confirmed that Hill used the same pink gun when he assaulted her that Adrienne described Hill using in her assault. Hill returned to the stand to testify to his version of the second incident. He denied having a gun or any involvement in the

5

robbery. He claimed that he also had found a posting for Stacie's escort services on backpage.com, and that the sexual encounter was consensual, whereupon the State presented rebuttal testimony. One of the other assailants, Angelo Gonzalez, corroborated Stacie's version of the assault; he testified that he witnessed Hill's sexual assault of Stacie as he was coming down the stairs of the apartment.

## Charge Error

On appeal, Hill complains that the trial court improperly instructed the jury with respect to the accomplice–witness rule.

### *Standard of review*

A trial court must submit to the jury "the law applicable to the case." *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2012); *Bolden v. State*, 73 S.W.3d 428, 431 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). When a statute requires an instruction under the circumstances, that instruction is the "law applicable to the case," and the trial court must instruct the jury "whatever the statute or rule requires." *Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008). We review a trial court's decision to deny a requested accomplice-witness jury instruction for an abuse of discretion. *See Smith v. State*, 332 S.W.3d 425, 439–40 (Tex. Crim. App. 2011); *Paredes v. State*, 129 S.W.3d 530, 538 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable

people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

### *Accomplice–witness instruction*

"An accomplice is someone who participates with [a] defendant before, during, or after the commission of the crime and acts with the required culpable mental state." *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). The Texas Code of Criminal Procedure prohibits a conviction based on an accomplice witness's testimony, unless other, non–accomplice evidence that tends to connect the accused to the offense corroborates it. *See* TEX. CODE CRIM. PROC. ANN. art 38.14 (West 2005). To be an accomplice, a witness must have participated in some affirmative act that promotes the commission of the offense with which the defendant is charged. *Druery*, 225 S.W.3d at 498. If the evidence shows that a witness is not an accomplice, a trial court need not instruct the jury on the accomplice–witness rule. *Smith*, 332 S.W.3d at 440.

If the witness cannot be prosecuted for the defendant's charged offense or a lesser–included offense, then the witness is not an accomplice witness as a matter of law. *Kunkle v. State*, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986). Further, "complicity with an accused in the commission of another offense" does not compel an accomplice witness instruction when there is no evidence that the witness was complicit in committing the charged offense. *Id.*

7

Hill complains that the trial court improperly used its accomplice–witness instruction in connection with the extraneous aggravated robbery of Stacie but not with the instruction on the sexual assault charge. We reject this complaint.

### *Aggravated sexual assault charge*

The trial court was not required to instruct the jury regarding the accomplice witness rule with respect to Hill's sexual assault charge. Because the State had charged Angelo Gonzalez with the aggravated robbery of Stacie, Gonzalez was an accomplice as a matter of law for that offense. But the conviction stems from Hill's later sexual assault of Adrienne; the evidence at trial was that Hill alone committed that crime. Because the jury heard no accomplice–witness testimony in connection with the aggravated sexual assault charge involving Adrienne, and no evidence showed that Gonzalez was complicit in that offense, an accomplice-witness instruction would not have been proper. *Id.*

Although the trial court admitted testimony from Stacie and Gonzalez as extraneous-offense evidence under Rule 404(b), this evidence does not compel a different result. Extraneous offense evidence is admissible to rebut the contention that the State's theory is fabricated. *See Wheeler v. State*, 67 S.W.3d 879, 887 n.22 (Tex. Crim. App. 2002) (admitting extraneous–offense evidence to rebut defensive theory of frame–up when extraneous misconduct is similar to charged offense and when witness lacked motive to lie); *Montgomery v. State*, 810 S.W.2d 372, 382

8

(Tex. Crim. App. 1990) (upholding admission of testimony by appellant's ex–wife concerning his inappropriate behavior and remarks around his children); *Blackwell v. State*, 193 S.W.3d 1, 12 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (involving frame–up defensive theory motivated by "bad blood" among family members). With regard to this evidence, the trial court instructed the jury on the sexual assault charge:

> if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose.

The trial court was not obliged to add an accomplice–witness instruction for the jury to properly determine the weight and credibility of Gonzalez's testimony, because Gonzalez was not an accomplice to the charged offense.

### *Aggravated robbery charge*

Hill further complains that the trial court erred in submitting an accomplice–witness instruction to the jury in connection with the aggravated robbery against Stacie, contending that it allowed the jury to find Hill guilty by finding that Gonzalez's testimony regarding the extraneous offenses was corroborated. We disagree.

9

Following the application paragraph of the aggravated robbery charge appears a Rule 404(b) instruction identical to the one given above in the aggravated sexual assault charge. Following that instruction appears the following:

> In regard to the charge involving complainant Stacie R[.]: An accomplice, as the term is here used, means anyone connected with the crime charged, as a party thereto, and includes all persons who are connected with the crime by unlawful act or omission on their part transpiring either before or during the time of the commission of the offense, and whether or not they were present and participated in the commission of the crime.

> A person is criminally responsible as a party to the offense if the offense is committed by his own conduct by the conduct of another for which he is criminally responsible or both. Mere presence alone, however, will not constitute one a party to an offense. A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, aids, or attempts to aid the other person to commit the offense. The term "conduct" means any act or omission and its accompanying mental state.

> You are instructed that a conviction cannot be had upon the testimony of an accomplice unless the accomplice's testimony is corroborated by other evidence tending to connect the defendant with the offense charged, and the corroboration is not sufficient if it merely shows the commission of the offense, but it must tend to connect the defendant with its commission.

> The witness, Angelo Gonzalez, is an accomplice, if an offense was committed, and you cannot convict the defendant upon his testimony unless you further believe that there is other evidence in this case, outside of the testimony of Angelo Gonzalez tending to connect the defendant with the offense committed, if you find that an offense was committed, and the corroboration is not sufficient if it merely shows the commission of the offense, but it must tend to connect the defendant with its commission, and then from all the evidence you must believe beyond a reasonable doubt that the defendant is guilty of the offense charged against him.

10

Hill's contention disregards the opening sentence of the instruction, in which the trial court instructed the jury that Gonzalez's testimony relates to a different offense—not the charged offense tried before them—and that it should consider the evidence, if at all, for the purpose of evaluating Gonzalez's credibility. The instruction also reiterates that the jury must believe that Hill was guilty of the charged offense to convict.

"On appeal, we generally presume the jury follows the trial court's instructions in the manner presented." *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). Nothing in the record refutes the presumption that the jury limited its consideration of Gonzalez's testimony in the manner that the charge directs.

## Conclusion

We hold that the trial court did not err in submitting the aggravated sexual assault charge without an accomplice-witness instruction. We further hold that the trial court did not err in submitting the jury instructions addressing Gonzalez's testimony. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Publish. TEX. R. APP. P. 47.2(b).

11