**941-15** *Court*

NO. **PD. 0941-15**

ORIGINAL

IN THE
TEXAS COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 25 2015

Abel Acosta, Clerk

STEPHEN WILLIAM SIROS
Petitioner
V.
THE STATE OF TEXAS
Respondent

FROM THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
AT HOUSTON
NO. 01-14-00288-CR

FILED IN
COURT OF CRIMINAL APPEALS

SEP 25 2015

Abel Acosta, Clerk

NO.1323111
IN THE 337th DISTRICT COURT
OF HARRIS COUNTY, TEXAS

PETITION FOR DISCRETIONARY REVIEW

STEPHEN WILLIAM SIROS
TDCJ #01934526/Eastham
2665 Prison Rd.#1
Lovelady, Texas 75851

Pro Se   Petitioner

ORAL ARGUMENT WAIVED

# TABLE OF CONTENTS

TABLE OF CONTENTS:                                                PAGES

INDEX OF AUTHORITIES                                             ii,iii

STATEMENT REGARDING ORAL ARGUMENT                                iv

STATEMENT OF THE CASE                                           iv

STATEMENT OF PROCEDURAL HISTORY                                 iv

QUESTIONS FOR REVIEW                                            1,2

1). WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING
    THAT THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE
    JUDGMENT OF CONVICTION

2). WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING
    THAT THE GIVING OF PROPER DEFFERENCE TO THE JURY'S
    RESOLUATION OF THE FACTS,THE CUMULATION OF FACT FORCE
    OF THE NON-ACCOMPLICE EVIDENCE TENDS TO CONNECT
    APPELLANT TO THE COMPLAINANT'S MURDER

3). WHETHER THE COURT OF APPEALS WAS CORRECT IN IT'S
    HOLDING THAT THE TRIAL COURT DID NOT ABUSE IT'S
    DISCRETION WHEN IT DID NOT INSTRUCT THE JURY THAT
    FIGUEREDO WAS AN ACCOMPLICE AS A MATTER OF LAW

4). WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING
    THAT WHEN DEFENDANT OFFERS THE SAME EVIDENCE TO WHICH
    HE EARLIER OBJECTED,HE IS NOT IN A POSITION TO
    COMPLAIN ON APPEAL

5). WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING
    THAT OVERRULING POINT OF ERROR BECAUSE ARGUMENTS AND
    AUTHORITIES PRESENTED WERE "DIFFERENT IN CHARACTER"
    FROM ERROR ALLEGED UNDER THE POINT

6). WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING
    TO NOT REVIEW THE PROPRIETY OF THE PROSECUTOR'S
    ARGUMENTS,WHEN APPELLANT FAILED TO OBJECT TO THOSE
    ARGUMENTS AT TRIAL

7). WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING
    THAT ANY ERROR IN INSTRUCTING THE JURY THAT APPELLANT
    COULD BE FOUND GUILTY AS THE PRINCIPAL ACTOR WAS
    HARMLESS ERROR

8). WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING
    THAT THE TRIAL COURT PROPERLY DENIED APPEALLANT'S
    MOTION TO SUPPRESS

|                        | PAGES |
|------------------------|-------|
| REASONS FOR REVIEW     | 2     |
| ARGUMENTS              | 2-14  |
| PRAYER FOR RELIEF      | 15    |
| CERTIFICATE OF SERVICE | 15    |
| APPENDIX               |       |

## INDEX OF AUTHORITIES

| CITATIONS | PAGES |
|-----------|-------|
| Allen V.State,253 S.W.3d 260 (Tex.Crim.App 2008) | 12 |
| Almanza V.State, 686 S.W.2d 157 (Tex.Crim.App 1985) | 11 |
| Amado V.State, 221 S.W.3d 666 (Tex.Crim.App 2007) | 13,14 |
| Brooks V.State, 323 S.W.3d 893 (Tex.Crim.app 2010) | 3 |
| Delacerda V.State,425 S.W.3d 367 (Tex.App Houston 1st Dist 2011) | 6 |
| Evins V.State, 331 S.W.3d 49 (Tex.App-Houston 1st Dist 2010) | 3 |
| Ex parte zapeda, 819 S.W.2d (Tex.Crim.App 1991) | 4 |
| Guzman V.State, 955 S.W.2d 85 (Tex.Crim.App 1997) | 13 |
| Hernandez V.State,939 S.W.2d 173 (Tex.Crim.App 1997) | 5 |
| Hill V.State, 451 S.W.3d 392 (Tex.App-Houston 1st Dist 1 2014) | 6 |
| Huerta V.State, 933 S.W.2d 648 (Tex.App.A San Ant 1996) | 7 |
| Jackson V.Virginia, 443 U.S. 307 (1979) | 3 |
| Jensen V.state, 66 S.W.3d 528 (Tex.App-Houston 1st Dist 2002) | 7 |
| Kirsch V.State, 357 S.W.3d 645 (Tex.Crim.App 2012) | 6 |
| Marron V.United States, 275 U.S. 192 (1927) | 14 |
| Matthews V.State, 431 S.W.3d 596 (Tex.Crim.App 2014) | 13 |
| Mays V.State, 318 S.W.3d 368 (Tex.Crim.App 2010 | 10 |
| McDonald V.State, 179 S.W.3d 571 (Tex.Crim.App 2005) | 8 |
| Miller V.State, 741 S.W.2d 382 (Tex.Crim.App 1987) | 10,11 |
| Montgomery V.State, 810 S.W.2d 372 (Tex.Crim.App 1991) | 8 |
| Ngo V.State, 175 S.W.3d 738 (Tex.Crim.App 2005) | 6 |
| Oursbourn V.State, 259 S.W.3d 159 (Tex.Crim.App 2008) | 6 |
| Prible V.State, 173 S.W.3d 724 (Tex.Creim.App .2005) | 8 |
| Richardson V.State, 865 S.W.2d 944 (Tex.Crim.App 1993) | 13 |

CITATIONS                                                           PAGES

   Sakil V.State, 287  S.W.3d 23 (Tex.Crim.App 2009)                  11

   Sander V.State, 787 S.W.2d 435 (Tex.App-Houston 1st Dist 1990)   10

   Sandoval V.State, 409 S.W.3d 259 (Tex.Crim.App 2013)             10

   Savant V.State, 544 S.W.2d 408 (Tex.Crim.App 1976)               12

   Singletary V.State, 509 S.W.2d 572 (Tex.Crim.App 1974)            5

   Smith V.State, 332 S.W.3d 425 (Tex. Crim.App 2011)             4,5,6

   State V.Betts, 397 S.W.3d 198 (Tex.Crim.App 2013)                13

   Taylor V.State, 260 S.W.3d 571 (Tex.Crim.App 2008)                6

   Taylor V.State, 332 S.W.3d 483 (Tex.Crim.App 2011)                9

   Temple V.State, 390 S.W.3d 341 (Tex.Crim.App 2013)                3

   Travino V.State, 100 S,.W.3d 232 (Tex.Crim.App 2003)              6

   United States V.Johson, 709 U.S. 515 (1983)                      14

   Wilson V.State, 7 S.W.3d 136 (Tex.Crim.App),1999))                7

   Winfrey V.State, 393 S.W.3d 763 (Tex.Crim.App 2013)               3


CONSTITUTIONAL LAW                                                  PAGES

   Const Ament 6,                                                    2
   Const Amend 14,                                               10,13


STATUTES                                                            PAGES

   Rule 68          TEX RULE APPELLATE PROCEDURE                     1
   Rule 66.3(c)                                                      2
   Rule 33.1                                                         7
   Rule 38.1(i)                                                      7
   Rule 44.2(b)                                                      7
   Rule 33.1(a)                                                     10

   Art. 38.14       TEX CODE CRIMINAL PROCEDURE                    4.5
   Art. 36.14                                                      6.9

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Tex.R.App.P.68.4(c),Petitioner waives oral argument.


## STATEMENT OF THE CASE

Petitioner was charged by indictment with the offense of capitol murder.(CR-6). After finding Petitioner guilty of the lesser offense of murder,the jury assessed punishment at 36-years confinement.(CR-124).


## STATEMENT OF PROCEDURAL HISTORY

The First Court of Appeals Affirmed the judgment and sentnece in it's opinion issued June 30,2015. No request for Rehearing was filed. The Texas Court of Criminal Appeals extended time to file Petition For Discretionary Review to Monday September 28,2015, in case PD-0941-15.This Petition is timely filed.

iv

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Petitioner submits this Petition for Discretionary Review pursuant to Tex.Rule.App.P 68. In support of this petition,Petitioner will show this Honorable Court the following:

I.

Petitioner would assert that the Court of Appeals erred in it's rulings on the issues on direct appeal.

PETITIONER'S QUESTIONS FOR REVIEW

[1]  WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING THAT THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE JUDGMENT OF CONVICTION?

[2]  WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING THAT THE GIVING OF PROPER DEFFERENCE TO THE JURY'S RESOLUTION  OF THE FACTS,THE CUMULATION OF FACT FORCE OF THE NON-ACCOMPLICE EVIDENCE TENDS TO CONNECT APPELLANT TO THE COMPLAINANT'S MURDER?

[3]  WHETHER THE COURT OF APPEALS WAS CORRECT IN IT'S HOLDING THAT THE TRIAL COURT DID NOT ABUSE IT'S DISCRETION WHEN IT DID NOT INSTRUCT THE JURY THAT FIGUEREDO WAS AN ACCOMPLICE AS A MATTER OF LAW?

[4]  Whether the court of appeals was correct in deciding THAT WHEN DEFENDANT OFFERS THE SAME EVIDENCE TO WHICH HE EARLIER OBJECTED,HE IS NOT IN A POSITION TO COMPLAIN ON APPEAL?

[5]  WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING THAT OVERRULING POINT OF ERROR BECAUSE ARGUMENTS AND AUTHORITIES  PRESENTED WERE "DIFFERENT IN CHARACTER" FROM ERROR ALLEGED UNDER THE POINT?

[6]  WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING TO NOT REVIEW THE PROPRIETY OF THE PROSECUTOR'S ARGUMENTS,WHEN APPELLANT FAILED TO OBJECT TO THOSE ARGUMENTS AT TRIAL?

1.

[7]  WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING
     THAT ANY ERROR IN INSTRUCTING THE JURY THAT APPELLANT
     COULD BE FOUND GUILTY AS THE PRINCIPAL ACTOR WAS
     HARMLESS ERROR?

[8]  WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING
     THAT THE TRIAL COURT PROPERLY DENIED APPELLANT'S
     MOTION TO SUPPRESS?


## REASON FOR REVIEW

Review is proper under Tex.Rule.App.P 66.3(c) Whether a Court

of Appeals has decided an important question of state or federal law

in a way that conflicts with the applicable decisions of the Court

of Criminal Appeals or the Supreme Court of the United States.

II.

QUESTION NUMBER ONE:

WHETHER  THE COURT OF APPEALS WAS CORRECT IN DECIDING
THAT THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE JUDGMENT
OF CONVICTION


Petitioner would assert that the Appeals Court applied the wrong

standard of review as follows:

In his first issue,Appellant asserts that the evidence was insufficient

to support the judgment of conviction for the offense of murder.

Specifically,Appellant asserts that the evidence was insufficient

to show that he was guilty of murder under the law of the parties.

The Appeals Court applied the following standanrd of review; We

review the sufficiency of the evidence establishing the elements of a

criminal offense for which the State has the burden of proof under a

single standard of review,regardless of whether an appellant presents

2.

the challenge as a legal or a factual sufficiency challenge.See,

Evins V.State,331 S.W.3d 49,53-54 (Tex.App-Houston [1st Dist]2010,

pet.ref'd)(construing majority holding of Brooks V.State,323 S.W.3d

893 (Tex.Crim.App.2010)).This standard of review is the standard

enunciated in Jackson V.Virginia,443 U.S.307,319,99 S.Ct 2781,2789).

See,Winfrey V.State,393 S.W.3d 763,768 (tex.Crim.App 2013).

The United States Constitution requires that a criminal conviction

be supported by evidence "necessary to convince a trier of fact beyond

a reasonable doudt of the existence of every element of the offense."

Jackson V.Virginia,443 U.S. 307 (1979).In Temple V.State,390 S.W.3d

341 (Tex.Crim.App 2013),the Court of Criminal Appeals ruled that there

is one standard:legal sufficiency,See,Brooks V.State,323 S.W.3d 893

(Tex.Crim.App 1 2010).Refusing to consider factual sufficiency of the

evidence in his trial deprives Siros of a protection afforded him under

Tex.Const.Art.V,Sec.6:"The decision of a Texas Court of Appeals shall

be conclusive on all questions of fact brought before them on appeal

or error." Therefore,review should be granted.


QUESTION NUMBER TWO:

WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING THAT THE
GIVING OF PROPER DEFFERENCE TO THE JURY'S RESOLUTION OF THE FACTS,
THE CUMULATION OF FACT FORCE OF THE NON-ACCOMPLICE EVIDENCE TENDS
TO CONNECT APPELLANT TO THE COMPLAINANT'S MURDER

Petitioner would assert that the Appeals Court applied the wrong

standard of review,when it applied no standard of review as follows:

In his second issue,Appellant asserts that there "is insufficient

evidence to corroborate the accomplice-witness testimony [of Figueredo],

3.

implicating Appellant as a party to murder."

The Appeals Court applied the following standard of review:
The accomplice-witness statute states, A conviction cannot be had upon
the testimony of an accomplice unless corroborated by other evidence
tending to connect the defendant with the offense committed;and the
corroboration is not sufficient if it merely shows the commission of
the offense.Tex.Code.Crim.Proc.Ann.art 38.14 (Vernon 2005).When reviewing
the sufficiency of non-accomplice evidence under Art.38.14,we decide
whether the inculpatory evidence tends to connect the accused to the
commission of the offense.Smith,332 S.W.3d at 442. The sufficiency
of non-compl accomplice evidence is judged according to the particular
facts and circumstances of each case.Id. The direct or circumstantial
non-accomplice evidence is sufficient corroboration if it shows that
rational jurors could have found that it sufficiency tended to connect
the accused to the offense. Id. When there are conflicting views of the
evidence one that tends to connect the accused to the offense and one
that does not-- we will make defer to the factfinder's resolution of
the evidence. Id. Therefore,it is not appropriate for appellate courts
to independently construe the non-accomplice evidence.Id.

A person is an accomplice if he,like the defendant,could be
prosecuted for the same or lesser included offense as defendant.
"Whether the person is actually charged and prosecuted for the
participation is irrelevant to the determination of accomplice
status-what matters is the evidence in the record."Ex parte Zapeda,
819 S.W.2d 874 (Tex.Crim.App 1991).There must exist sufficient evidence
to connect the accomplice to the criminal offense as a "blameworthy

4.

participant," but whether the accomplice is actually charged or prosecuted for his participation is irrelevant.Singletary V.State, 509 S.W.2d 572 (Tex.Crim.App 1974). The accomplice witness rule of Texas C.C.P,Art 38.14 reflects the legislative intent that accomplice testimony should be viewed with great caution,because accomplices have great incentives to lie,to avoid punishment or shift criminal blame to others. "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed;and the corroboration is not sufficient if it merely shows the commission of the offense." Hernandez V.State, 939 S.W.2d $_{\Lambda}$*173* (Tex.Crim.App. 1997);Smith V.State,332 S.W.3d 425 (Tex.Crim.App 2011). Therefore,review should be granted.


QUESTION FOR REVIEW NUMBER THREE:

WHETHER THE COURT OF APPEALS WAS CORRECT IN IT'S HOLDING THAT THE
TRIAL COURT DID NOT ABUSE IT'S DISCRETION WHEN IT DID NOT INSTRUCT
THE JURY THAT FIGUEREDO WAS AN ACCOMPLICE AS A MATTER OF LAW

   Petitioner would assert that the Appeals Court applied the wrong

standard of review as follows;

In his third issue,Appellant asserts the trial court erred in instrcuting

the jury to determine whether Figueredo was an accomplise as a matter

of fact,rather than instructing the jury that Figueredo was an accomplice

as a matter of law.

   The Appeals Court applied the following standard of review; A trial

court must submit to the jury  the law applicable to the case.

5.

Tex.Code.Criminal.Procedure.Ann.Art.36.14 (Vernon 2012); Hill V.State, 451 S.W.3d 392,395 (Tex.App-Houston [1st Dist]2014,no pet). When a statute requires an instruction under the circumstances,that instruction is the "law applicable to the case," and the trial court must instruct the jury "whatever the statute or rule requires." Oursbourn V.State,259 S.W.3d 159, 180 (Tex.Crim.App 2008). We e review a trial court's decision to deny a requested accomplice-witness jury instruction for an abuse of discretion. See Smith V.State,332 S.W.3d 425,439-40 (Tex.Crim.App 2011);Hill,451 S.W.3d at 395-96. A trial court abuses its discretion only if its decision is "so clearly as to lie outside the zone within which reasonable people might disagree." Taylor V.State, 268 S.W.3d 571,579 (Tex.Crim.App 2008).

A reviewing court considers a court's decision to deny a requested accomplice charge for an abuse of discretion. Delacerda V.State,425 S.W.3d 367,395 (Tex.App-Houston [1s Dist]2011). "The trial judge abuses discretion if the decision is so clearly wrong as to lie outside the zone within which reasonable people might disagree." Taylor V.State,268 S.W.3d 571,579 (Tex.Crim.App 2008). If charge error exist,the Court determines if the error caused sufficient harm to warrant reversal. Kirsch V.State, 357 S.W.3d 645 (Tex.Crim.App 2012);Ngo V.State, 175 S.W.3d 738 (Tex.Crim.App 2005).When charge error is pressented by objection,the error is reversible if it was calculated to injure the defendant's rights by a showing of "some harm" Trevino V.State, 100 S.W.3d 232 (Tex.Crim.App 2003). Therefore,review should be granted.

6.

QUESTION FOR REVIEW NUMBER FOUR:

WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING THAT WHEN DEFENDANT OFFERS THE SAME EVIDENCE TO WHICH HE EARLIER OBJECTED, HE IS NOT IN A POSITION TO COMPLAIN ON APPEAL

Petitioner would assert that the Appeals Court applied the wrong standard of review as follows;

In his fourth issue,Appellant asserts "the trial court erred by allowing evidence of extraneuos offenses of (1) Appellant and (2) many instances of other parties illegal extraneous behavior into evidence."Appellant asserts that "the jury heard" about these extraneous offenses "because of the court's adverse ruling on the motion in limine and motion to suppress." However,as discussed infra,the trial court properly denied Appellant's motion to suppress. In addition, a ruling on a motion in limine does not preserve error for review.See,Tex.R.App.P.33.1; Wilson V.State, 7 S.W.3d 136,144 (Tex.Crim.App 1999). Appellant lists, in bullet-point format,26 instances of when he claims the trial court improperly admitted extraneous-offenses evidence. However,Appellant fails to provide record references fore 25 of these instances. See,Tex.R.App.P 38.1(i) (providing appellant's brief must contain clear and concise argument for contention made,with appropriate citations to authorities and the record). Courts have held that issues on appeal are waived if an appellant fails to support his contentions by citations to the record. See,Jensen V.State, 66 S.W.3d 528,545 (Tex.App-Houston [1s Dist]2002, pet. ref'd) (holding appellant waived review of his complaint c because section of his brief on that issue did not contain citations to the record). Also see,Huerta V.State,933 S.W.2d 648,650 (Tex.app.-San Antonio 1996, no pet).

7.

A trial court's ruling on admissibility of extraneous evidence is reviewed by an abuse of discretion standard,See.McDonald V.State, 179 S.W.3d 571 (Tex.Crim.App 20050. If the trial court's ruling is outside a "zone of reasonable disagreement" and incorrect under a legal theory applicable to the case,it is reversible.Montgomery V.States, 810 S.W.2d 372 (Tex.Crim.App 1991); Prible V.State,173 S.W.3d 724 (Tex.Crim.App 2005). Therefore,review should be granted.

QUESTION FOR REVIEW NUMBER FIVE:

WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING THAT OVERRULING POINT OF ERROR BECAUSE ARGUMENTS AND AUTHORITIES PRESENTED WERE "DIFFERENT IN CHARACTER" FROM ERROR ALLEGED UNDER THE POINT

Petitioner would assert that the Appeals Court applied the wrong standard of review as follows;

In his fifth issue,Appellant asserts that the trial court erred by improperly charging the jury on extraneous offenses." With regard to extraneous offenses,the trial court instructed the jury as follows;

> You are further instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case,you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses,if any,the same in determining preparation,plan, knowledge,accident of the defendant,and even than you may only consider the motive,opportunity,intent,identity,or absence of mistake or if any,in connect with the offense,if any,alleged against him in the indictment and for no other purpose.

Appellant claims that,in addition to this instruction,the trial court had a duty to instruct the jury sua sponte that "none of the extraneous offenses" of Figueredo, Jonathan, Velasquez, or Garcia

8.

"could be imputed to Appellant." Appellant asserts that the trial court had duty to give this instruction even though he did not object to the lack of such instruction at trial.

The charge should have included wording that Appellant could not be connected to all the extraneous offenses introduced at trial and that none of those acts,of Juan,Jonathon,Emmanuel and Chris,could be imputed to him.Tex.R.App.P.Rule 44.2(b) determines if charge error results in harm. An error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. Introduction of an extraneous murder and a barrage of evidence of organized crime activities of parties weights heavily in favor of harm. It is "inherently prejudicial,tends to confuse the issues,and forces the accused to defend himslef against charges not part of the present case against him." The "extraneous offenses' by Appellant were an AR-15 "traced to him," which some may view as a bad act and regarding Juan's answer that Stephen "didn't really deal drugs much," as the State artfully worded their question. The charge should have included wording that none of those extraneous offenses of Juan,Jonathon,Emmanuel and Chris could be imputed to Appellant. The court must deliver a jury charge setting forth the law applicable to the case. the duty exist even when counsel fails to object to inclusions in the charge. See Article 36.14 Tex.Code.Crim.Pro.; Taylor V.State,332 S.W.3d 483 (Tex. Crim.App 2011). An instruction that instructs a jury to consider inadmissable evidence for a limited purpose still instructs a jury to consider inadmissable evidence. The extraneous conduct of all the parties should not have been considered for any purpose.

9.

(Sandoval V.State, 409 S.W.3d 259 (Tex.App-Austin 2013); reversed,improper

admission of character-conformity evidence and charge.)


QUESTION FOR REVIEW NUMBER SIX

WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING TO NOT REVIEW
THE PROPRIETY OF THE PROSECUTOR'S ARGUMENTS,WHEN APPELLANT FAILED
TO OBJECT TO THOSE ARGUMENTS AT TRIAL

Petitioner would assert that the Appeals Court applied the wrong

standard of review as follows;

In his sixth issue,Appellant claims, "The State committed reversble error

[during the punishment phase] by arguing that Appellant is part of the

'drug wourld' of the accomplices and should be punished accrdingly."

Appellant did not,however,object to the State's remark during closing

argument. Thus,Appellant has failed to preserve this complaint for our

review. See.Tex.R.App.P.33.1(a); Mays V.State,318 S.W.3d 368,394 (Tex.

Crim.App 2010) ("We will not review the propriety of the prosecutor's

arguments [when] appellant failed to object to those arguments at trial.").

The State's argument presented a 14th amendment due process claim,

infecting the trial with unfairness that constituting a denial of

protection guaranteed him by the United States and Texas Constitutions

See,Miller V.State,741 S.W.2d 382 (Tex.Crim.App 1987). In Sanders V.State,

787 S.W.2d 435 (Tex.Crim.-Houston [1st Dist] 1990),the prosecutor improperly

argued,urging the jury to support the fight against illegal drugs,and

improperly urged the jury to "to stop these drugs..we back our policemen

in our crackdown on crack/. I ask you to do your part." The conviction

was reversed. Ms.Allen's improper argument so infected the trial with

unfairness that it constitues a denial of protection guaranteed by

10.

the United States and Texas Constitutions.See,Miller V.State,741 S.W.2d 382 (Tex.Crim.App 1987). Appellant,eligible for probation,was sentenced to 36 years in prison. Most of the trail testimony revolved around the extraneous offenses,and little on Siros' connection to murder.


QUESTION FOR REVIEW NUMBER SEVEN:

WHETHER THE COURT OF APPEALS WAS CORRECT IN DECIDING THAT ANY ERROR IN INSTRUCTING THE JURY THAT APPELLANT COULD BE FOUND GUILTY AS THE PRINCIPAL ACTOR WAS HARMLESS ERROR

Petitioner would assert that the Appeals Court applied the wrong standard of review as follows;

In his seventh issue Appellant asserts that the trial court erred by submitting a jury instruction permitting the jury to find him guilty of the offense of murder as a principal actor . Appellant correctly points out that the jury charge permitted the jury to find him guilty of the complainant's murder as either a party to the offense or as the principal actor. Appellant asserts that no evidence was offered to show that he was guilty of the complainant's murder as the principal actor. He points out that the evidence showed that Garcia shot the complainant; no evidence was offered to showe that Appellant was the shooter. Presuming without deciding that the submission of the primary-actor instruction was error,we turn to the question of harm. When,as here,the appellant did not object to the alleged error,we will reverse only if the error is "so egregious and created such harm" that the defendant did not receive a fair and impartial trial. Sakil V.State,287 S.W.3d 23,26 (tex.Crim.App 2009)(quoting,Almanza V.State,686 S.W.2d 157,171 (Tex.Crim App 1985)).

11.

We consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and the weight of probative evidence, (3) the parties arguments, and (4) any other relevant information found in the record as a whole. Allen V. State, 253 S.W.3d 260, 264 (Tex.Crim.App 2008).

Egregious harm exist when the record shows that the defendant suffered actual, rather than theoretical harm from charge error. Because as an AR-15 was admitted and the jury sent out notes about the AR-15 "belonging to Siros," the jury may have been mislead into believing that they could convict of the lesser included offense of murder under various theories, including that Stephen may have been a shooter, which was unsupported by the evidence. The lesser-included murder tracks the Capital Murder indictment, less the remuneration portion. However, it was error for the court to charge Siros jury with alternative theories in the lesser included murder charge, allowing them to consider a theory not presented at trial, namely, that Appellant himself was the shooter. It is reversible error for the trial court to submit a charge on the defendant non-shooter as a shooter when the evidence showed only that this (so called) his parner shot the weapon. The charge permitted the jury to non-unanimously convict under different prosecution theories, one of which was not charged or presented in trial. The harmful error was reversible. See, Savant V. State, 544 S.W.2d 408 (Tex.Crim.App 1976). Therefore, review should be granted.


QUESTION FOR REVIEW NUMBER EIGHT:-

12.

WHETHER THE COURT OD APPEALS WAS CORRECT IN DECIDING THAT THE
TRIAL COURT PROPERLY DENIED APPELLANT'S MOTION TO SUPPRESS

Petitioner would assert that the Appeals Court applied the wrong

standard of review as follows;

In his eight issue,Appellant claims that the trial court erred by denying

his motion to suppress evidence of the two AK-15 rifles seized during

the search of an apartment conducted pursuant to a search warrant.

During the suppression hearing,which was conducted during trial,

Appellant asserted that the polcie exceeded the scope of the search

warrant because it was issued only for the seizure of narcotics. The Fourth

Amendment of the U.S.Constitution protects individuals from unreasonable

searches and seizures. State V.Betts,397 S.W.3d 198,203 (Tex.Crim.App

2013);Richardson V.state,865 S.W.2d 944.948 (Tex.Crim.App 1993). The

rights secured by the Fourth Amendment are personal;accodingly,an

accused has standing to challenge the admission of evidence obtained by

an "unlawful" search or seizure only if he had a legitimate expectation

of privacy in the place invaded. See, Matthews V.State, 431 S.W.3d 596,

606 (Tex.Crim.App 2014);Betts 397 S.W.3d at 203. The defendant who

challenges a search has the burden of proving facts demonstrating a

legitimate expectation of privacy. Betts 397 S.W.3d at 203. He must

show that he had a subjective expectation of privacy in the place invaded

and that society is prepared to recognize that expectation of privacy

as objectively reasonable.Id.

Denial of a motion to suppress is reviewed under a bifurcated

standard. Amador V.State,221 S.W.3d 666 (Tex.Crim.App 2007);Guzman V.

State, 955 S,W.2d 85 (Tex.Crim.App 1997).

13.

Evidence is viewed in the light most favorable to the trial court's rulings regarding fact and application of law-to-fact questions turning on the evaluation of credibility. When application of law-to-fact question do not hinge upon the credibility and demeanor of witnesses, the appellate court reviews the ruling de novo.Amador at 673.

The U.S.Constitution provides that the "right of the people to be secure in their persons,house,papers,and effects,against unreasonable searches and seizures,shall not be violated,and no warrant shall issue, but upon probable cause,supported by oath or affirmation,and particularly decribing the place to be searched,and the presons or things to be seized." The "particularity" requirement is meant to prevent general searches and seizure of one thing under a warrant that describes another thing to be seized. See, Marron V.United States,275 U.S. 192 (1927). In United States V.Johnson, 709 U.S. 515 (1983), while executing a search warrant,plo police unlawfully seized a not-described-in-the-warrant locked floor safe,presuming that it was connected to the offense of illegally possessing weapons. The government argued that because the warrant authorized officers to search,it also authorized them to srize. "This argument is a fundamental misapprehension of Fourth Amendment law." Police could hace obtained a second warrant,subjected to judicial review, to seize the items,which they failed to do so,in Johnson and Mr.Siros' case. Therefore,review should be granted.

14.

## PRAYER FOR RELIEF

WHEREFORE,PREMISES CONSIDERED, Petitioner prays the Honorable Court will grant this petition for discretionary review,reverse the Court of Appeals judgment and remand the case for a new trial and grant any other relief to which Petitioner may be entitled.

RESPECTFULLY SUBMITTED,

X _____

Stephen William Siros
TDCJ# 01934526/Eastham
2665 Prison Rd.#1
Lovelady,Texas 75851

pro se

## CERTIFICATE OF SERVICE

The Petitioner hereby certifies that a true and correct copy of the foregoing    Petition for Discretionary Review have been served on the Harris County District Attorney Devon Anderson,and the State Prosecuting Attorney at P.O.Box 12405,Capitol Station,Austin,Texas 78711,on this 18 day of September ,2015.

X _____
Stephen William Siros

15.

APPENDIX

COURT OF APPEALS FOR FIRST DISTRICT OF TEXAS

OPINION



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00288-CR

———————————

## STEPHEN WILLIAM SIROS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

———————————

On Appeal from the 337th District Court
Harris County, Texas
Trial Court Case No. 1323111

———————————

## MEMORANDUM OPINION

Appellant Stephen William Siros was indicted for the offense of capital murder.[1] The jury found Appellant guilty of the lesser-included offense of

---

[1] *See* TEX. PENAL CODE ANN. § 19.03(a)(3) (Vernon Supp. 2014).

murder.[2]  It assessed his punishment at 36 years in prison.  In eight issues, Appellant claims the evidence was insufficient to support the judgment, asserts jury-charge error, challenges evidentiary rulings made by the trial court, claims improper jury argument by the State, and asserts the trial court erred by denying his motion to suppress.

We affirm.

## Background

Around 12:30 a.m. on July 17, 2009, the complainant, Isaias Valdez, was driving his truck on I-45 when someone in another vehicle on the freeway shot him in the head, killing him.  Detective C.E. Elliot, a homicide detective with the Houston police department, investigated the shooting.  On October 23, 2009, Detective Elliot received information from Officer R. Bradley, an officer in the narcotics division, relating to the complainant's murder.

Officer Bradley had been surveilling Appellant's brother, Jonathan Siros (hereinafter "Jonathan"), as part of a narcotics investigation.  Over time, Officer Bradley had observed Jonathan in the company of (1) Appellant, (2) Christopher Garcia, and (3) Juan Figueredo.  Officer Bradley obtained a search warrant for an apartment at a location where he had observed Jonathan, Appellant, Garcia, and Figueredo.  The warrant was executed on October 23, 2009.  Appellant was not at

---

[2]  *See id.* § 19.02(b)(1) (Vernon 2011).

2

the apartment at the time the warrant was executed, but Officer Bradley had seen Appellant in the parking lot about an hour before the search. At the time of the search, Jonathan and Garcia were in the apartment along with other men. Although the warrant had been for illegal narcotics, no drugs were found.

Before the search, a confidential informant had stated the weapon used to kill the complainant may be at the apartment. Officer Bradley had learned from the homicide division that a weapon similar to an AR-15 rifle had been used to kill the complainant. During the search of the apartment, the officers found two AR-15 semiautomatic rifles. One of the rifles had been purchased by Appellant.

In addition to Jonathan and Garcia, another man detained at the apartment was Matthew Roy. Officer Bradley and another officer, Detective E. Cisneros, interviewed Roy. From Roy, the police obtained information regarding the shooting of the complainant. Based on this information, the officers obtained an arrest warrant for Garcia, charging him with the complainant's murder.

On December 1, 2009, one of the other men that had been in the apartment, Figueredo, was arrested and charged by federal authorities with narcotics trafficking. Due to the significant amount of narcotics involved, Figueredo was facing a federal sentence of 292 to 365 months in prison. To obtain a reduction in his sentence, Figueredo agreed to talk to police about the murder of a confidential informant. In the course of these discussions, Figueredo also talked to police about

3

the complainant's murder. Based on the information learned from the interviews, the police obtained an arrest warrant for Appellant.

The police conducted a videotaped interview of Appellant in which he discussed the complainant's murder. Appellant stated that, on the night of the murder, he was staying at his father's home. Garcia was a neighbor of Appellant's father. Garcia came to the father's home and asked Appellant if Appellant wanted to go for a ride. Appellant agreed, and they left in Garcia's van.

With Garcia driving the van, they went to a club called El Huracan and parked in the parking lot. Appellant got out of the van and went to buy some tacos from a vendor in the parking lot. When he returned to the van, Garcia was in the passenger seat. Appellant got in the driver's seat, and Garcia told Appellant, "Let's go." Appellant got on the freeway to head back to his father's home. He claimed that, as they were driving down the freeway, Garcia suddenly pulled out a rifle and shot the complainant, who was in a truck on the freeway. Appellant stated that he did not know that Garcia had a weapon or that Garcia had planned to shoot the complainant.

Initially, Appellant was charged with the offense of murder with respect to the complainant's death. Appellant was later re-indicted for the offense of capital murder.

Figueredo testified at Appellant's trial. He explained that, in 2008 and 2009, he had trafficked large amounts of narcotics, between 35 and 100 kilograms of cocaine per week, into the United States from Mexico. He sold the illegal drugs to "mid-level people" who in turn sold it to others for sale on the streets. Figueredo became acquainted with Appellant's brother, Jonathan, when Jonathan bought a quantity of cocaine for street sale. The two became friends and would at times deal narcotics together.

Figueredo had known the complainant, Isias Valdez, for a number of years and considered him to be a "close acquaintance." In May 2009, the complainant obtained five kilograms of cocaine from Figueredo and Jonathan to sell on the street. The complainant paid for four kilograms, but he did not have the money to pay for the fifth kilogram. Figueredo and Jonathan agreed that the complainant could pay them the $19,000 he owed for the fifth kilogram after he sold it. The complainant owed half of the $19,000 to Figueredo and half to Jonathan.

Figueredo testified that the complainant did not pay him and Jonathan for the fifth kilogram. Figueredo testified that he had not been bothered by the complainant's non-payment and nonetheless had still considered the complainant to be his friend. He thought that the complainant would make an effort "to make up for anything he lost."

Figueredo testified that the complainant's non-payment of the debt meant more to Jonathan because Jonathon had much less money than Figueredo. Jonathan asked Figueredo for his assistance in locating the complainant. On July 17, 2009, Figueredo received a call from a cocaine distributor, informing Figueredo that the complainant was at El Huracan. Figueredo passed the information along to Jonathan.

Figueredo drove his car to El Huracan and parked in the parking lot. Figueredo then saw Jonathan, Garcia, and Appellant arrive at the club in a van. They parked next to Figueredo's car. Figueredo could not see who was driving the van because it was parked close to his car, and it was dark.

Jonathan got out of the van and got into the passenger seat of Figueredo's car. Jonathan told Figueredo that Appellant and Garcia were in the van. The men knew that the complainant was in the club because they saw his truck in the parking lot. The men sat in the parking lot, waiting for the complainant, but they did not go into the club. After about 20 minutes, the complainant still had not come out of the club. Figueredo and Jonathan left in Figueredo's car to go to a different club called Pleasures, which was about 20 minutes away from El Huracan. As they drove to Pleasures, Jonathan received a call from Appellant. During the call, Appellant said something to Jonathan about a shooting. Figueredo heard Jonathan laugh at a comment Appellant made to Jonathan during the call.

6

Appellant and Garcia arrived at Pleasures about 10 minutes after Figueredo and Jonathan had arrived there. The four men sat down at a table inside the club. Appellant and Garcia began talking about what had happened at El Huracan after Figueredo and Jonathan had left that location.

At trial, Figueredo testified that Garcia boasted, "I took one shot and domed him," meaning "a headshot." Figueredo then heard Appellant brag that it was his good driving skills that allowed Garcia to make the shot. From what he had heard being said that night, Figueredo inferred that Garcia had shot the complainant while Appellant was driving.

Three months later, Figueredo met Jonathan in the parking garage of an apartment complex to pick up money Jonathan was "turning in" to Figueredo. Garcia and Appellant were also present. Jonathan gave Figueredo the money but then stated to Figueredo that he needed some of the money back to give to Appellant. Figueredo testified that Jonathan told him that Appellant was asking for money "for doing the killing [of the complainant] for [Jonathan]." Figueredo further testified that he gave $5,000 back to Jonathan to give to Appellant.

As stated, Appellant was charged with the offense of capital murder. The indictment alleged that Appellant had "unlawfully, . . . intentionally and knowingly" caused the death of the complainant "for the promise of remuneration" from Jonathan.

7

In addition to capital murder, the court's jury charge also instructed the jury on the lesser-included offense of murder. The trial court further instructed the jury on the law of parties and on accomplice-witness testimony. The jury found Appellant guilty of the offense of murder and assessed Appellant's punishment at 36 years in prison.

This appeal followed. Appellant raises eight issues.

## Sufficiency of the Evidence

In his first issue, Appellant asserts that the evidence was insufficient to support the judgment of conviction for the offense of murder. Specifically, Appellant asserts that the evidence was insufficient to show that he was guilty of murder under the law of the parties.

## A. Standard of Review

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under a single standard of review, regardless of whether an appellant presents the challenge as a legal or a factual sufficiency challenge. *See Ervin v. State*, 331 S.W.3d 49, 53–54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct.

8

2781, 2789 (1979). *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

Pursuant to the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts

9

in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

In our review of the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

## B.  Legal Principles

A person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2011); *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013); *Nelson v. State*, 405 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). A person may be convicted as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. *See* TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2011). As relevant under the instant circumstances, a person is criminally responsible for the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits,

10

encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a).

Mere presence of a person at the scene of a crime either before, during or after the offense, or even flight from the scene, without more, is insufficient to sustain a conviction as a party to the offense; however, combined with other incriminating evidence it may be sufficient to sustain a conviction. *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985). In determining whether a defendant participated as a party in the commission of an offense, the jury may consider events that occurred before, during or after the offense, and may rely on acts that show an understanding and common design. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996).

## C. Analysis

Appellant does not dispute that Garcia shot the complainant or that Appellant was driving the vehicle from which Garcia fired the shot. Rather, Appellant asserts that the evidence was not sufficient to show that he is guilty under the law of the parties because he was unaware of Garcia's plan to shoot the complainant.

In his videotaped statement, which was admitted into evidence, Appellant claimed that he was completely surprised when Garcia pulled out a rifle and shot

11

the complainant. He stated that he did not know that there was a weapon in Garcia's van or that Garcia planned to shoot the complainant.

In contrast, Figueredo testified that, shortly after the murder, he heard Appellant boasting and bragging that Garcia had only been able to shoot the complainant because Appellant had driven so well. Figueredo testified that Appellant bragged that Garcia could not have made the shot if Appellant had not "drove straight." Figueredo further testified that he heard Appellant boast that Garcia "wouldn't have been able to get the shot off if [Appellant] wouldn't have drove."

Here, the jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given their testimony. *See* TEX. CODE. CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979). Accordingly, the jury was entitled to believe Figueredo's testimony and disbelieve Appellant's statement that he was surprised when Garcia shot the complainant. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

Appellant's statements made at the club, Pleasures, on the night of the murder show that he intentionally assisted Garcia in the commission of offense. Appellant's statement indicated that he maneuvered the van into position so that Garcia could aim accurately and shoot the complainant, who was in a vehicle travelling on the freeway. Appellant not only admitted that it was his driving that

12

enabled Garcia to shoot the complainant but boasted that it was his driving that facilitated the fatal shot.

We conclude that a rational jury could have found beyond a reasonable doubt that Appellant, acting with the intent to promote or to assist the commission of the offense, aided or attempted to aid Garcia to commit the offense of murder. *See* TEX. PENAL CODE ANN. § 7.02(a)(2); *see also Hoang v. State*, 263 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (concluding that evidence was sufficient to support murder conviction as a party when accused maneuvered his vehicle in way to facilitate shooter's ability to hit complainant's vehicle). We hold that the evidence was sufficient to support the judgment of conviction.

We overrule Appellant's first issue.

## Accomplice-Witness Instruction

In his third issue, Appellant asserts the trial court erred in instructing the jury to determine whether Figueredo was an accomplice as a matter of fact, rather than instructing the jury that Figueredo was an accomplice as a matter of law.

### A. Standard of Review

A trial court must submit to the jury "the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2012); *Hill v. State*, 451 S.W.3d 392, 395 (Tex. App.—Houston [1st Dist.] 2014, no pet.). When a statute requires an instruction under the circumstances, that instruction is the "law applicable to the

13

case," and the trial court must instruct the jury "whatever the statute or rule requires." *Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008).

We review a trial court's decision to deny a requested accomplice-witness jury instruction for an abuse of discretion. *See Smith v. State*, 332 S.W.3d 425, 439–40 (Tex. Crim. App. 2011); *Hill*, 451 S.W.3d at 395–96. A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

## B.  Legal Principles

An accomplice is someone "who participates with a defendant before, during, or after the commission of the crime and acts with the requisite culpable mental state." *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006). An accomplice is also someone who is charged, or under the evidence could have been charged, with the same offense as the defendant or a lesser-included offense. *Zamora v. State*, 411 S.W.3d 504, 510 (Tex. Crim. App. 2013). To be considered an accomplice, the witness "must have engaged in an affirmative act that promote[d] the commission of the offense that the accused committed." *Smith v. State*, 332 S.W.3d at 439 (citing *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007)). Evidence must exist connecting the alleged accomplice to the offense as a "blameworthy participant," but "whether the alleged accomplice-

14

witness is actually charged or prosecuted for his participation is irrelevant." *Cocke*, 201 S.W.3d at 748 (citing *Blake v. State*, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998)).

The evidence at trial dictates whether an accomplice as a matter of law or fact instruction is required. *Smith*, 332 S.W.3d at 439 (citing *Cocke*, 201 S.W.3d at 747). A witness is an accomplice as a matter of law if he has been indicted for the same offense or a lesser included offense, or when the evidence clearly shows that the witness could have been so charged. *Cocke*, 201 S.W.3d at 748; *Druery*, 225 S.W.3d at 498. The trial court is required to give the jury an accomplice-witness instruction if a witness is an accomplice as a matter of law. *Cocke*, 201 S.W.3d at 748. However, "the evidence must leave no doubt that a witness is indeed an accomplice as a matter of law." *Smith*, 332 S.W.3d at 441. If the evidence does not clearly show the witness is an accomplice as a matter of law, or if the parties present conflicting evidence as to whether the witness is an accomplice, the trial court should allow the jury to decide whether the witness is an accomplice as a matter of fact with an instruction defining the term "accomplice." *Druery*, 225 S.W.3d at 498–99; *Cocke*, 201 S.W.3d at 747–48.

## C. Analysis

Appellant asserts that the trial court should have instructed the jury that Figueredo was an accomplice as a matter of law because he could have been

15

charged with the offense of murder with respect to the complainant. Appellant points out that the evidence showed Figueredo was an admitted "drug kingpin" to whom the complainant owed over $9,000 for a kilogram of cocaine. He also points out that the evidence showed that Figueredo called Jonathan and told him that the complainant was at the El Huracan club. Appellant further points out that, three months later, Figueredo gave money to Appellant for the murder of the complainant. However, when this evidence is read in the context of the entire record, there were fact issues with respect to whether Figueredo was an accomplice.

Figueredo's testimony indicated that Jonathan was upset with the complainant with respect to the unpaid debt. However, Figueredo testified that he had not been concerned about the money the complainant owed him. Figueredo stated that he "was never bothered about it." He testified that he still considered the complainant to be his friend even though he owed him money. Although he testified that he helped Jonathan locate the complainant on the night of the murder, no evidence indicates that Figueredo assisted in locating the complainant for the purpose of murdering him rather than for the purpose of collecting the money from him.

With respect to the money that was paid to Appellant several months after the murder, Figueredo testified that he met with Jonathan to collect money that

Jonathan owed him. After Jonathan handed Figueredo the money, Jonathan asked for money back, stating that he needed to give some of it to Appellant. Figueredo testified Jonathan told him that he needed to give Appellant "for doing the killing for [Jonathan]."

In short, the record shows that conflicting evidence was presented at trial with regard to whether Figueredo was an accomplice with respect to the complainant's murder. We conclude that the evidence does not clearly show that Figueredo was an accomplice as a matter of law. Thus, we hold that the trial court did not abuse its discretion when it did not instruct the jury that Figueredo was an accomplice as a matter of law.

We overrule Appellant's third issue.

### Corroborating Testimony

In his second issue, Appellant asserts that there "is insufficient evidence to corroborate the accomplice–witness testimony [of Figueredo], implicating Appellant as a party to murder."

### A. Legal Principles

The accomplice-witness statute states,

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). When reviewing the sufficiency of non-accomplice evidence under Article 38.14, we decide whether the inculpatory evidence tends to connect the accused to the commission of the offense. *Smith*, 332 S.W.3d at 442. The sufficiency of non-accomplice evidence is judged according to the particular facts and circumstances of each case. *Id.* The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense. *Id.* When there are conflicting views of the evidence— one that tends to connect the accused to the offense and one that does not—we will defer to the factfinder's resolution of the evidence. *Id.* Therefore, it is not appropriate for appellate courts to independently construe the non-accomplice evidence. *Id.*

**B.     Analysis**

Under Article 38.14, it is not necessary for the corroborating evidence to directly link the accused to the crime. *Richardson v. State*, 879 S.W.2d 874, 880 (Tex. Crim. App. 1993). The corroborating evidence also does not need to be sufficient by itself to establish guilt beyond a reasonable doubt. *Id.* "Were the law otherwise, the testimony of the accomplice would be valueless." *Id.*

"'Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may

tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction.'" *Id.* (quoting *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984)). Although Appellant claimed that he did not know that Garcia had the AR-15 rifle in the van or that Garcia planned to shoot the complainant, Appellant admitted that he was driving the vehicle from which Garcia shot the complainant. In other words, Appellant was not just passively at the scene of the crime; rather, he was controlling the vehicle on the freeway from which Garcia was able to shoot the complainant in the head, while the complainant was in another vehicle traveling down the freeway. The jury could have found it unlikely that Appellant unwittingly drove in a manner that would have allowed Garcia to make an accurate shot into another moving vehicle on the freeway.

In addition, before executing the search warrant for the apartment at which the police had surveilled Jonathan, the police learned from an informant that the weapon involved in the complainant's murder may be in the apartment. During the search, they recovered two AR-15 rifles. The evidence showed that one of the rifles had been purchased by Appellant. Although the exact type of firearm used in the murder was not determined, the police were able to determine that a high-powered rifle had been used. Officer Bradley testified at trial that the homicide division believed the weapon used had been "something like an AR-15 [rifle]."

We hold that, giving proper deference to the jury's resolution of the facts, the cumulative force of the non-accomplice evidence tends to connect Appellant to the complainant's murder. We overrule Appellant's second issue.

## Extraneous-Offense Evidence

In his fourth issue, Appellant asserts "[t]he trial court erred by allowing evidence of extraneous offenses of (1) Appellant and (2) many instances of other parties' illegal extraneous behavior into evidence." Appellant asserts that "the jury heard" about these extraneous offenses "[b]ecause of the court's adverse rulings on the motion in limine and motion to suppress." However, as discussed *infra*, the trial court properly denied Appellant's motion to suppress. In addition, a ruling on a motion in limine does not preserve error for review. *See* TEX. R. APP. P. 33.1; *Wilson v. State*, 7 S.W.3d 136, 144 (Tex. Crim. App. 1999).

Appellant lists, in bullet-point format, 26 instances of when he claims the trial court improperly admitted extraneous-offense evidence. However, Appellant fails to provide record references for 25 of these instances. [3] *See* TEX. R. APP. P.

---

[3] The only evidence for which Appellant offers a record citation is evidence related to the execution of the search warrant, which resulted in the discovery of two AR-15 rifles, the same type of weapon believed to have been used to kill the complainant. While he asserted the rifles were outside the scope of the search warrant, Appellant does not point to where in the record he lodged an extraneous-offense objection to this evidence. A point of error on appeal must comport with the objection made at trial. Appellant did not preserve his extraneous-offense complaint for review with respect to the evidence related to the search warrant because he did not object to this evidence on such basis at trial. *See* TEX. R. APP. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

20

38.1(i) (providing appellant's brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and the record). Courts have held that issues on appeal are waived if an appellant fails to support his contentions by citations to the record. *See Jensen v. State*, 66 S.W.3d 528, 545 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (holding appellant waived review of his complaint because section of his brief on that issue did not contain citations to the record); *Huerta v. State*, 933 S.W.2d 648, 650 (Tex. App.—San Antonio 1996, no pet.) (relying on rule that appellant must direct court to specific portion of record supporting complained of error in concluding issue waived).

Given the absence of citations to the record, it follows that Appellant has not pointed us to an instance in which he objected during trial to the extraneous-offense evidence of which he complains. To preserve a complaint for appellate review, an appellant must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. TEX. R. APP. P. 33.1(a)(1)(A).

In any event, much of the evidence Appellant cites pertains to the narcotics trafficking operation engaged in by Figueredo and Appellant's brother, Jonathan. Relatedly, Appellant complains of evidence pertaining to the extraneous murder of a narcotics informant, Enrique Velasquez. Appellant asserts that, in admitting the complained-of evidence, the State characterized Appellant to be "of the same

21

character as [Figueredo]: a violent drug dealer, possibly involved in multiple murders, possessing an AR-15 found with other weapons, and involved in organized crime involving tens of millions of dollars."

As the State points out, there were instances at trial in which evidence of Figueredo's and Jonathan's drug trafficking and evidence of Velasquez's murder were admitted without objection by Appellant. Even though he raised extraneous-offense and relevancy objections at trial on occasion to this type evidence, Appellant did not object each time it was offered nor did he request a running objection. "[A]n objection must be made each time inadmissible evidence is offered unless the complaining party obtains a running objection or obtains a ruling on his complaint in a hearing outside the presence of the jury." *Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008). Thus, Appellant's complaints regarding the evidence were not preserved. *See id.*

In addition, as the State further points out, Appellant also offered evidence regarding the narcotics-trafficking operation and regarding Velasquez's murder. The erroneous admission of evidence is harmless if the same evidence is offered by a defendant in another part of the trial. *See Saldano v. State*, 232 S.W.3d 77, 102 (Tex. Crim. App. 2007); *see also Amunson v. State*, 928 S.W.2d 601, 608 (Tex. App.—San Antonio 1996, pet. ref'd) ("When the defendant offers the same

evidence to which he earlier objected, he is not in a position to complain on appeal.").

We overrule Appellant's fourth issue.

## Extraneous-Offense Instruction

In his fifth issue, Appellant asserts that "[t]he trial court erred by improperly charging the jury on extraneous offenses." With regard to extraneous offenses, the trial court instructed the jury as follows:

> You are further instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, the same in determining preparation, plan, knowledge, accident of the defendant, and even then you may only consider the motive, opportunity, intent, identity, or absence of mistake or if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose.

Appellant claims that, in addition to this instruction, the trial court had a duty to instruct the jury sua sponte that "none of the extraneous offenses" of Figueredo, Jonathan, Velasquez, or Garcia "could be imputed to Appellant." Appellant asserts that the trial court had duty to give this instruction even though he did not object to the lack of such instruction at trial.

In support of his assertion, Appellant cites Rule of Appellate Procedure 44.2(b), which governs harm analysis relating to non-constitutional error.

23

Appellant also cites authority for the general proposition that the trial court must instruct the jury regarding the law applicable to the case. However, as the State points out, Appellant has failed to cite any authority to support his assertion that the trial court was required to instruct the jury that the extraneous offenses of Figueredo, Jonathan, Velasquez, or Garcia could not be imputed to Appellant. Thus, Appellant has inadequately briefed this issue by neglecting to present argument and authorities as required by Texas Rule of Appellant Procedure 38.1(h). *See* TEX. R. APP. P. 38.1(h); *see also Cardenas v. State*, 30 S.W.3d 384, 393–94 (Tex. Crim. App. 2000) (deciding in capital murder case that defendant's points complaining of lack of jury instruction on voluntariness of defendant's statements to police were inadequately briefed when no authority or accompanying argument provided to support claim); *Smith v. State*, 907 S.W.2d 522, 532 (Tex. Crim. App. 1995) (overruling point of error because arguments and authorities presented were "different in character" from error alleged under the point).

We overrule Appellant's fifth issue.

### Improper Jury Argument

In his sixth issue, Appellant claims, "The State committed reversible error [during the punishment phase] by arguing that Appellant is part of the 'drug world' of the accomplices and should be punished accordingly." Appellant did not, however, object to the State's remark during closing argument. Thus, Appellant

has failed to preserve this complaint for our review. *See* TEX. R. APP. P. 33.1(a); *Mays v. State*, 318 S.W.3d 368, 394 (Tex. Crim. App. 2010) ("[W]e will not review the propriety of the prosecutor's arguments, [when] appellant failed to object to those arguments at trial.").

We overrule Appellant's sixth issue.

## Principal-Actor Instruction

In his seventh issue, Appellant asserts that the trial court erred by submitting a jury instruction permitting the jury to find him guilty of the offense of murder as a principal actor. Appellant correctly points out that the jury charge permitted the jury to find him guilty of the complainant's murder as either a party to the offense or as the principal actor.

Appellant asserts that no evidence was offered to show that he was guilty of the complainant's murder as the principal actor. He points out that the evidence showed that Garcia shot the complainant; no evidence was offered to show that Appellant was the shooter.

Presuming without deciding that the submission of the primary-actor instruction was error, we turn to the question of harm. When, as here, the appellant did not object to the alleged error, we will reverse only if the error is "'so egregious and created such harm'" that the defendant did not receive a fair and impartial trial. *Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009) (quoting

25

*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). We consider (1) the entire jury charge, (2) the state of the evidence, including contested issues and the weight of probative evidence, (3) the parties' arguments, and (4) any other relevant information found in the record as a whole. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008).

During closing argument, the State argued only that Appellant was guilty as a party to the offense. In this regard, the prosecutor stated, "[T]he evidence that has been presented to you over these last two days shows beyond a reasonable doubt that [Appellant] assisted Christopher Garcia when Christopher Garcia used this gun or the other gun that was purchased by [Appellant] to murder Isaias Valdez."

To show the principal-actor instruction was harmful, Appellant points to a note sent out by the jury during deliberations that refers to the AR-15 rifle as "belonging to" the Appellant. He asserts that this indicates the jury may have been misled into believing that Appellant was the shooter and that it could convict him as the principal actor. However, simply because the jury may have considered the weapon to belong to Appellant does not necessarily mean that the jury thought he was the shooter. The jury may have thought that Appellant furnished the weapon to Garcia to use to commit the offense.

In any event, if, as Appellant claims, guilt as the principal actor would be an irrational finding under the evidence, then it is highly unlikely that a rational jury would base its verdict on the principal-actor theory. *Cf. Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999) (applying same reasoning in case in which appellant argued that he was harmed by parties instruction when it would have been irrational for jury to find him guilty as a party). As discussed under the first issue, the evidence was sufficient to support Appellant's conviction for the offense of murder as a party. "When a charge authorizes a jury to convict a defendant as a principal or a party and the evidence establishes the defendant's guilt only as a party, error in submitting the defendant's guilt as a principal is harmless under the *Almanza* standard." *Payne v. State*, 194 S.W.3d 689, 698 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *see also Washington v. State*, 449 S.W.3d 555, 567–68 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding defendant not harmed by submission of principal-actor instruction when evidence showed he was guilty as a party). We conclude that any error in instructing the jury that Appellant could be found guilty as the principal actor was harmless error. Having failed to show harm, Appellant also has failed to show egregious harm. *See Cathey*, 992 S.W.2d at 466.

We overrule Appellant's seventh issue.

## Motion to Suppress

In his eighth issue, Appellant claims that the trial court erred by denying his motion to suppress evidence of the two AK-15 rifles seized during the search of an apartment conducted pursuant to a search warrant. During the suppression hearing, which was conducted during trial, Appellant asserted that the police exceeded the scope of the search warrant because it was issued only for the seizure of narcotics. The State responds that the trial court properly denied the motion to suppress because Appellant did not show that he had standing to challenge the search of the apartment.

### A. Standard of Review and Applicable Legal Principles

The Fourth Amendment of the U.S. Constitution protects individuals from unreasonable searches and seizures. *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013); *Richardson v. State*, 865 S.W.2d 944, 948 (Tex. Crim. App. 1993). The rights secured by the Fourth Amendment are personal; accordingly, an accused has standing to challenge the admission of evidence obtained by an "unlawful" search or seizure only if he had a legitimate expectation of privacy in the place invaded. *See Matthews v. State*, 431 S.W.3d 596, 606 (Tex. Crim. App. 2014); *Betts*, 397 S.W.3d at 203. The defendant who challenges a search has the burden of proving facts demonstrating a legitimate expectation of privacy. *Betts*, 397 S.W.3d at 203. He must show that he had a subjective expectation of privacy

in the place invaded and that society is prepared to recognize that expectation of privacy as objectively reasonable. *Id.*

When determining whether a defendant has demonstrated an objectively reasonable expectation of privacy, we examine the totality of the circumstances surrounding the search, including (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he had taken normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *Id.* at 203–04; *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002). This is a non-exhaustive list of factors, and no one factor is dispositive. *See Granados*, 85 S.W.3d at 223. "'Although we defer to the trial court's factual findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing de novo.'" *Betts*, 397 S.W.3d at 204 (quoting *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004)).

**B.      Analysis**

Appellant did not testify at the suppression hearing. We agree with the State that no evidence was offered to satisfy the factors for determining whether Appellant had standing to challenge the search of the apartment. Appellant offered

no evidence to show that (1) he had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; or (6) whether his claim of privacy is consistent with historical notions of privacy.

During trial, Officer Bradley testified that he had surveilled Appellant's brother Jonathan at the apartment. The officer testified that he had seen Appellant as well as Garcia, Jonathan, and Figueredo at the "location" of the apartment. Without further explanation, Officer Bradley stated that these men were "connected" with the apartment. Officer Bradly testified that, less than an hour before the search, he had seen Appellant in the parking lot of the apartment complex looking at a truck with other people. The officer stated that Appellant left before the search warrant was executed. No evidence was presented that Appellant had any possessory interest in the apartment, any right to control the apartment, or used the apartment for any purpose. In fact, no evidence was presented that Appellant had ever been inside the apartment.

Furthermore, the search-warrant affidavit, admitted into evidence, stated that Emmanuel Valdez lived at the apartment. The affidavit also stated that the

apartment was "in the charge of and controlled by" Jonathan, Garcia, and Figueredo. No mention was made of Appellant in the affidavit.

On this record, we conclude that Appellant has not met his burden to establish a legitimate expectation of privacy such that he would have standing to contest the search of the apartment in which the AR-15 rifles were seized. We hold that the trial court properly denied Appellant's motion to suppress.

We overrule Appellant's eighth issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

31